**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**



FILED

FEB - 8 2008

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JUSTIN MICHAEL WOLFE,

 Petitioner,

v.

CIVIL ACTION NO. 2:05CV432

UNITED STATES OF AMERICA,

 Respondent

*MEMORANDUM OPINION AND ORDER*

 This matter is before the Court on the petition of Justin Michael Wolfe ("Petitioner") for

a writ of habeas corpus pursuant to Title 28 United States Code Section 2254, challenging the

convictions and sentences entered by the Circuit Court of Prince William County, Virginia. The

matter was referred to United States Magistrate Judge James E. Bradberry pursuant to the

provisions of 28 U.S.C. §636(b)(1)(B) and (C), and Rule 72 of the Rules of the United States

District Court for the Eastern District of Virginia. Before the Court are Plaintiff's Objections to

the Magistrate Judge's Report and Recommendation to the Court (Obj.) in the above captioned

matter.

**I. FACTUAL AND PROCEDURAL HISTORY**

 Petitioner was convicted by a jury on January 7, 2002, of murder for hire, use of a

firearm in the commission of a felony, and conspiracy to distribute marijuana. As a result of his

convictions, Petitioner was sentenced to death on the murder for hire charge. Defendant was

1

sentenced to thirty years and three years, respectively, on the drug and firearm charges. However, the sentences were not imposed until a post-trial hearing was conducted. Before this hearing, new counsel appeared on Petitioner's behalf. The sentencing hearing, which was originally scheduled for April 22, 2002, was continued until June 26, 2002, so that new counsel would have adequate time to prepare. On June 26, 2002, all of the evidence was heard and at the conclusion of the hearing, the court imposed all sentences the jury recommended.

Petitioner filed an appeal in the Supreme Court of Virginia on the murder for hire conviction and filed an appeal in the Virginia Court of Appeals on the firearm and drug convictions. The non-death penalty cases were certified to the Supreme Court of Virginia and consolidated. On February 24, 2004, Petitioner filed a petition for writ of habeas corpus in the Supreme Court fo Virginia. The Supreme Court of Virginia dismissed the petition on March 10, 2005. Petitioner filed a timely petition for rehearing, which the court denied on June 17, 2005. On July 8, 2005, Petitioner filed a petition for writ of certiorari with the United States Supreme Court, seeking review of the Virginia Supreme Court's decision to enforce the Commonwealth of Virginia's 50-page limit for habeas petitions, which forced Petitioner to remove entire claims from his State Petition.

On July 22, 2005, Petitioner filed a notice of intent to file a petition for writ of habeas corpus in the United States District Court for the Eastern District of Virginia, Norfolk Division. This Court granted the motion, and counsel was appointed. On July 26, 2005, Petitioner filed a motion for a scheduling order which addressed two matters raised by the Commonwealth in response to Petitioner's request for a stay of execution and appointment of counsel: (1) that Petitioner be required to file his petition within thirty days, and (2) that the court impose a fifty-

2

page limit on Petitioner, the standard that was applied by the Commonwealth of Virginia in rejecting petitioner's original 149 page state habeas corpus petition. On August 9, 2005, this Court granted Petitioner ninety days from the date of the order within which to file his habeas petition and ordered that the petition be limited to 75 pages, unless otherwise granted by leave of the Court. On October 14, 2005, Petitioner's motion for extension of time within which to file his federal habeas petition was denied. On October 26, 2005, Petitioner filed a motion entitled "Petitioner's Motion for Confirmation of Filing Plan, or in the Alternative, to Waive Page Limit, and for Consideration on an Expedited Basis." The Court also denied this motion.

On November 7, 2005, Petitioner filed his federal habeas petition under authority of 28 U.S.C. §2254, in conformity with this Court's order that the petition be no longer than 75 pages. This petition was accompanied by an appendix consisting of 149 pages. On December 19, 2005, respondent filed a motion to dismiss. On December 15, 2005, Petitioner filed an amended habeas petition which was 75 pages and also accompanied by a second volume to the appendix, consisting exclusively of affidavits of Owen Barber and Carl Huff. The primary difference between the original habeas petition and the amended petition is the presence of Barber's new version of the crime in the amended petition. By order dated June 8, 2006, United States Magistrate Judge James E. Bradberry ("Magistrate Judge") ruled upon a number of pending motions, including Petitioner's first "Motion for Expansion of the Record," seeking to include a number of post-trial affidavits. The Magistrate Judge also rejected Petitioner's second "Motion for Expansion of the record" by Order of September 22, 2006.

Pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b), this Court referred the matter to the Magistrate Judge. The Magistrate Judge issued his Report and Recommendation

("R&R") on August 7, 2007, recommending that Petitioner's petition for writ of habeas corpus be DISMISSED and Respondent United States of America's ("Respondent") motion to dismiss be GRANTED. Upon an agreed motion of the parties, this Court extended the time for filing objections to the R&R until September 6, 2007.

On September 6, 2007, Petitioner filed numerous objections to the Magistrate Judge's R&R. Respondent had no objections to the R&R. Petitioner's objections to the report consist of "general" and "specific" objections which fail to conform to the format that the Magistrate Judge followed for his recommendations. Petitioner subsequently filed a motion for leave to file substitute objections to the R&R with conformed page references and memorandum in support.[1] Petitioner also filed a second motion to submit proffer on October 15, 2007. On October 19, 2007, Respondent filed a memorandum in opposition to Petitioner's second motion to submit proffer and a motion to strike Petitioner's proffered petition.[2]

## II. LEGAL STANDARD

### A. For Review of a Magistrate Judge Report & Recommendation

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the Court, having reviewed the record in its entirety, shall make a *de novo* determination of those portions of the Magistrate Judge's R&R to which the petitioner specifically objected. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

---

[1] This motion is GRANTED.

[2] The Court DENIED Petitioner's second motion for leave to submit proffer in an order dated February 6, 2008.

**B.  For Analyzing a Petition for a Federal Writ of Habeas Corpus**

The Anti-terrorism and Effective Death Penalty Act ("AEDPA") supplies the standard for

determining whether the writ of habeas corpus should be granted and, therefore, whether the

recommendation of the Magistrate Judge needs to be rejected, modified, or recommitted to him

with instructions. The AEDPA is generally applicable to Petitioner's case because his federal

petition was filed after April 24, 1996, the enactment date of the AEDPA. *See Lindh v. Murphy*,

521 U.S. 320 (1997) (holding that the new provisions of chapter 153 generally apply to cases

filed after the AEDPA became effective).[3]  The AEDPA standard is set forth in  28 U.S.C.

§ 2254 (d) (2006), which provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination
>> of the facts in light of the evidence presented in the State court
>> proceeding.

The Court has reviewed the record and Petitioner's objections and made *de novo*

findings with respect to each relevant objection as indicated below. The record supports

each factual finding and Petitioner's objections are without merit.

---

[3]  The specific provision of § 107 of the AEDPA, however, is not applicable.  Although §
107 contains several provisions pertaining specifically to capital defendants, these provisions are
applicable only if the state meets the "opt-in" requirements set forth in § 107.  Virginia does not
meet the qualifications of § 107, thus precluding its applicability to this case.

## III. DISCUSSION

### A.  Recommendations Without Objection

The Magistrate Judge recommended that the claims he referenced as Orig. Pet. Claims 4(e) and 4(f) and Amd. Pet. Claims 6(e) and 6(f) be found procedurally defaulted. (R&R 61). Although Petitioner generally objected to the overall thoroughness of the Magistrate Judge's analysis of procedural default, Petitioner did not "specifically" object to its application with respect to these findings. Therefore, Petitioner has waived any objection to the Magistrate Judge's disposition of those claims. The Court approves the Magistrate Judge's findings of default for the reasons stated therein.

### B.  General Objections

### I.     General Objection 1: The Magistrate Judge Did Not Err by Relying on a Summary of Facts Least Favorable to the Petitioner

Petitioner first presents several general objections, followed by specific objections in the order in which he presented the claims in his amended habeas petition ("Amended Petition") and in the order listed by the Magistrate Judge at pages 27-32 of the R&R.

Petitioner's first general objection is that the Magistrate Judge erred by relying on a summary of facts least favorable to the Petitioner. (Obj., 2). However, Petitioner is wrong when he states that Rule 12(b)(6) compels this Court to view the disputed facts in the light most favorable to him. (Obj., 3). Petitioner's authority for his proposition is not a habeas corpus case. In *Lambeth v. Bd. of Comm'rs*, the district court was not considering a Rule 5 Answer or Antiterrorism and Effective Death Penalty Act ("AEDPA") review, but rather various motions "pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief could be granted." 407 F.3d 266, 268 (4th Cir. 2005).

6

The reviewing court must make a determination of the facts in light of the evidence presented in the state court proceeding rather than the Petitioner's contrary allegations. 28 U.S.C. 2254(d)(2). Reliance on the factual determination of the state court is specified in 28 U.S.C. 2254( e)(1), which states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, **a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.**

28 U.S.C. §2254(e)(1) (2006) (emphasis added). To emphasize the deference courts should give to the factual findings of the state court, the statute further provides that when an applicant has failed to develop the factual basis of a claim in state court proceedings, an evidentiary hearing "shall not" be conducted unless a petitioner establishes: (1) that the claim relies on a new, retroactively-applied constitutional rule, (2) that the fact could not be previously discovered with due diligence or (3) that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254 (e)(2). The Magistrate Judge correctly followed the standards mandated by the AEDPA for federal habeas review of a state court decision. Accordingly, this Court finds no error in the Magistrate Judge's reliance on facts found in the state court record.

## II.    General Objection 2: The Magistrate Judge Did Not Err by Considering the Appendix Subject to the Habeas Petition Page Limitation.

Petitioner's second general objection is that the Magistrate Judge erred by considering the appendix subject to the habeas petition page limitation. (Obj., 3). Petitioner argues that the two-volume appendix to the habeas petition should be considered by the Court and states that the

7

notion that page limits encompass the appendix as well as the petition finds no support in law or practice. (Obj., 4). However, the Magistrate Judge correctly distinguished between Petitioner's appendix and other appendices that are properly submitted to the court. Petitioner did not limit his appendix to the record upon which the decisions of the state courts were based. Instead, Petitioner attempted to use his appendix to present new arguments. Petitioner is not entitled to disregard the rules of the court regarding the length of pleadings. Also, as the Magistrate Judge noted, the matters raised in many of the documents relate to matters already in existence at the time of trial and either were not communicated to the appropriate party, or not used for specific reasons. For these reasons, Petitioner was not entitled to submit the appendix.

In addition, because a determination of whether a state court unreasonably applied a legal principle must be assessed in light of the record the state court had before it, the Magistrate Judge was correct to not consider Petitioner's two-volume appendix to the habeas petition. *See Holland v. Jackson,* 542 U.S. 649, 652 (2004). If the documents submitted are not properly part of the record of the case, their function is to attempt to add argument and pages to the brief. Petitioner asserts that a refusal to allow him to present his evidence and a refusal to consider the evidence amounts to a violation of the Due Process Clause. (Obj., 5). However, Respondent is correct in the assertion that "Wolfe has no right to file pleadings that disregard the rules of this Court or the orders entered reasonably regulating the conduct of the parties in this case, nor does he have any right to consideration of purported evidence related to claims that are defaulted, irrelevant, untimely, discoverable in state court with due diligence, or inadmissible for other reasons." (Director's Response to Petitioner's Objections To The Magistrate Judge's Report and Recommendation ("Resp."), 6). The R&R addresses the page limits by concluding that the

8

materials included in the Appendix are not proper, and correctly refuses to allow Petitioner to disregard this Court's decisions that have preceded the current federal petition. With respect to Petitioner's second general objection, the Court approves and adopts the Magistrate Judge's recommendations.

### III. General Objection 3: The Magistrate Judge Correctly Excused Claims that were Procedurally Defaulted

Petitioner's third general objection is that the Magistrate Judge failed to consider whether there were grounds for overcoming or excusing procedural defaults. (Obj., 5). Petitioner asserts that a federal court must address the merits of a defaulted or unexhausted claim under any one of multiple doctrines.[4] (Obj., 5). Petitioner objects to the Magistrate Judge's failure to determine whether the defaults are excused under one of these doctrines. (Obj., 5). In particular, Petitioner emphasizes that when one alleges that the deficient performance of his trial or direct appeal counsel is cause for the default, that allegation must be reviewed *de novo,* regardless of whether a grant of relief on the identical claim of ineffective assistance of counsel would be limited by 28 U.S.C. §2254. However, the burden is not upon the Magistrate Judge to search for and determine whether the defaults are excused. Federal habeas review of the claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

---

[4] Petitioner asserts that a federal court must address the merits of a defaulted or unexhausted claim if the default does not rest on independent and adequate state law grounds, *Ford v. Georgia,* 498 U.S. 411 (1991), if there is cause and prejudice for the default, *Coleman v. Thompson,* 501 U.S. 722 (1991), if the failure to adjudicate the claim would result in a miscarriage of justice, *id.,* or if the failure to exhaust the claim stems from the fact that there is an absence of available state corrective process or the state's process is ineffective to protect the applicant's rights. 28 U.S.C. § 2254(b)(1)(B).

fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. at 750. Although Petitioner

asserts that he is entitled to *de novo* review of claims because the deficient performance of his

counsel is cause for the default, this Court has determined that ineffective assistance of counsel

claims not presented to the state courts or presented and reasonably rejected by the state courts

will be rejected. *Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Orbe v. True,* 233 F. Supp. 2d

749, 759-60 (E.D. Va. 2002). With respect to Petitioner's third general objection, the Court finds

no error in the Magistrate Judge's ruling.

## IV.     General Objection 4: The Magistrate Judge Properly Resolved Material Factual Disputes Without Conducting an Evidentiary Hearing

Petitioner next objects to the Magistrate Judge's resolution of material factual disputes

without conducting an evidentiary hearing. (Obj., 6). Petitioner asserts that an evidentiary

hearing is not precluded by §2254(e) and that he was entitled to an evidentiary hearing in state

habeas on disputed issues of fact. (Obj., 6). However, Petitioner points to no specific factual

disputes in his general objections. Petitioner relies on *Walker v. True,* 399 F.3d 315, 327 (4th

Cir. 2005) to support the proposition that his right to a hearing is straightforward. (Obj., 6).

However, Petitioner is subject to 28 U.S.C. §2254(e)(2), which states:

> if the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that, (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. §2254 (e)(2). Significant weight must be given to the record and deference must be

given to the reasonable findings of the state court. *See Schiro v. Landrigan* 127 S.Ct. 1933, 1940

(2007) (stating that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). As a result, the Court approves and adopts the Magistrate Judge's ruling with respect to Petitioner's fourth general objection.

## C. Specific Objections

### I. Specific Objection 1: The Magistrate Judge Did Not Err in Dismissing Petitioner's Claims of Actual Innocence (Amd. Pet., Claim 1)

In addition to Petitioner's general objections, Petitioner also has a series of "specific objections" that the Court will address in turn. Petitioner's first specific objection asserts that the Magistrate Judge erred in dismissing Petitioner's claims of actual innocence. (Obj., 7). Petitioner objects to the resolution of the issue of actual innocence and the Magistrate Judge's procedures to the extent he addressed the issue of actual innocence. (Obj., 7). Specifically, Petitioner objects to the Magistrate Judge's failure to assess his allegation of innocence as a gateway to the consideration of defaulted claims. (Obj., 7). Petitioner cites to *Herrera v. Collins,* to support the proposition that a truly persuasive demonstration of actual innocence will render his execution unconstitutional. 506 U.S. 390, 417 (1993). However, the Court in *Herrera* specifically stated: "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying criminal proceeding." *Id.* at 400. Further, the Court stated that this rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact. *Id.* Although the Supreme Court has held that a federal habeas court may review a claim that the evidence adduced at a state trial was not sufficient to convict a criminal defendant beyond a reasonable doubt, the Court also

11

emphasized that the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 401.

Petitioner argues that the Magistrate Judge failed to consider the affidavits of Owen Barber, Carl Huff, and Jason Coleman, all of which support Petitioner's claim. (Obj., 8). The Magistrate Judge was not required to consider Petitioner's appendix because it has already been determined that the appendix violates the rules set out by the Court because its purpose is to introduce new facts and arguments into this case. However, to the extent that the Magistrate Judge did consider the documents contained in the appendix, the Court believes the Magistrate Judge has made the correct assessment.

Petitioner objects to the Magistrate Judge determining, without an evidentiary hearing or further inquiry, that the letter Barber wrote to repudiate his affidavit is more credible than the affidavit itself. (Obj., 8). However, "where a motion for a new trial is based upon recantation of testimony given at the trial, such recantation is 'looked upon with the utmost suspicion.'" *United States v. Johnson,* 487 F.2d 1278, 1279 (4th Cir. 1973). The Magistrate Judge found that the recantation of Owen Barber, the primary evidentiary basis for the claim of innocence, was not a "truly persuasive demonstration of actual innocence." (R&R, 27). Barber retracted the recantation, writing, in part, "the truth was already told by me when I testified in court at [petitioner]'s trial. I wish I could help [petitioner] but lying is not the way." (R&R, 27). The Magistrate Judge found that since the recantation was inconsistent with testimony deemed credible during Petitioner's trial, it could never have been truly persuasive as a demonstration of

12

actual innocence.[5]

Petitioner cites *Bond v. Procunier,* 780 F.2d 461, 466 (4th Cir. 1986) to support the

proposition that the Magistrate Judge inappropriately made a credibility determination because

he did not observe the affiant in court. In *Bond,* the dissenting judge stated that "credibility

determinations can only be made after the judge has had the opportunity to observe the affiant in

court. 'It is only when the witnesses are present and subject to cross-examination that their

credibility and the weight to be given their testimony can be appraised.'" *Id.* However, in *Bond,*

the Fourth Circuit majority found that an evidentiary hearing was unnecessary based on evidence

suggesting that the affidavit lacked credibility and did not mandate an in-court observation of the

affiant. *Id.* at 464. Here, the Magistrate Judge properly considered the testimony that Owen

Barber produced under oath at trial in addition to the letter that the affiant wrote that expressed

that he had already told the truth at trial. (R&R, 58).

The Magistrate Judge specifically found that it is "simply not possible for this Court to

read Barber's trial testimony, which was given under oath; read an affidavit, given almost four

years after the trial, contradicting his testimony at trial, and read a letter written five months after

the affidavit, stating that he testified truthfully at trial, and draw any conclusion other than the

fact that Barber is attempting to manipulate the circumstances attendant to this case." (R&R, 27).

In *Townsend v. Sain,* the United States Supreme Court stated, "where the facts are in dispute, the

federal habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a

full and fair evidentiary hearing in a state court, either at the time of trial or in a collateral

[5] The Magistrate Judge noted that Barber was called at trial, cross-examined extensively, and remains the most direct evidence of what happened on the night of the murder. There is nothing that petitioner has alleged that fairly draws into question whether Barber was a credible witness at trial or whether petitioner lost any evidence which would have made a difference in his case. (R&R, 42).

proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts." 372 U.S. 293, 318 (1963). Although §2254(d)-(f) was enacted after the Supreme Court's decision in *Townsend,* the basic import of the statutory provision is conveyed by the foregoing quotation. The Court finds that state-court trier of fact conducted a full hearing and reliably found the relevant facts. Owen Barber's affidavit and subsequent repudiation do not warrant the requirement of an evidentiary hearing in this case.

Petitioner objects to the Magistrate Judge determining that Carl Huff's[6] affidavit is not credible on its face. (Obj., 8). Nevertheless, the Magistrate Judge found that Carl Huff had no basis for what was set forth in his affidavit. (R&R, 27). As the Respondent noted, the hearsay contained in Carl Huff's affidavit would not have been admitted or considered in an evidentiary hearing and there was no legal basis to give it weight. (Resp., 13); *See Herrera v. Collins,* 506 U.S. at 417 (noting that motions based on affidavits are disfavored because the affiant's statements were obtained without the benefit of cross-examination and stating that petitioner's affidavits are particularly suspect because they consist of hearsay). In addition, the Magistrate Judge came to his conclusion after examining Barber's testimony at trial, which was supported by other witnesses who testified at trial, as well as Barber's retraction of his recantation. (R&R, 27). The Magistrate Judge took into consideration the fact that Huff is serving a long sentence for robbery, abduction, use of a firearm, burglary, and other crimes as well as the above facts in making a credibility assessment. (R&R, 27). Based on the record, this Court agrees with the Magistrate Judge's assessment.

---

[6] Carl Huff was Owen Barber's former cell mate at Wallens Ridge State Prison and has no direct knowledge of the crime of which Barber was convicted. (R&R, 25).

14

With respect to Jason Coleman, the Magistrate Judge did not err in refusing to grant an evidentiary hearing. Coleman was available to the Commonwealth of Virginia and Petitioner's counsel following the murder and before trial. (R&R, 42). He was interviewed by the Commonwealth in the presence of Petitioner's counsel, but he was never called as a witness. (R&R, 42). Neither party trusted Coleman to be a helpful witness and given the evidence produced at trial, it was reasonable for the Magistrate Judge to determine that Jason Coleman's affidavit is not credible. In criminal cases, the trial is the paramount event for determining the defendant's guilt or innocence. Where a Petitioner has been afforded a fair trial and convicted of the offense for which he was charged, the constitutional presumption of innocence disappears. *Herrera v. Collins*, 506 U.S. at 399. Petitioner has not created "a truly persuasive demonstration of actual innocence" as contemplated in *Herrera*. The Court approves and adopts the Magistrate Judge's ruling with respect to Petitioner's first specific objection.

## II. Specific Objection 2: The Magistrate Judge Did Not Err by Finding that there Are No *Brady* Violations Sufficient to Warrant Relief (Amd. Pet., Claim 2)

Petitioner's next objection is that the Magistrate Judge erred by finding that there are no *Brady* violations sufficient to warrant relief. (Obj., 9). Petitioner objects to the Magistrate Judge's decision in the aggregate and individually. (Obj., 10). Petitioner states that the Magistrate Judge's rejection of his *Brady* claims is unclear because he makes mutually inconsistent statements. (Obj., 10). Petitioner objects to the Magistrate Judge's failure to determine whether the Commonwealth's concealment of facts, combined with its representation that it disclosed all required *Brady* information, constitutes cause. (Obj., 10). Petitioner also objects to the Magistrate Judge's failure to determine whether counsel's deficient performance is cause for the default of any *Brady* claim. (Obj., 10). In addition, Petitioner objects to the

15

Magistrate Judge's failure to determine whether the portion of Petitioner's claim that the state court found barred under the rule in *Penn v. Smyth,* 49 S.E.2d 600 (Va. 1948) was defaulted on adequate state law grounds. (Obj. 10).

The Magistrate Judge found that to the extent that Petitioner has not previously raised any portion of a *Brady* claim, the claim is procedurally defaulted. (R&R, 39). A §2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. 28 U.S.C. §2254(b) & (c); *See also Rose v. Lundy,* 455 U.S. 509, 518 (1982)(noting that "[t]he exhaustion doctrine is principally designed to protect the state court's role in the enforcement of federal law and prevent disruption of state judicial proceedings"). The state court found Petitioner had waived his Brady claims when he failed to present any argument in support of the claims during his direct appeal.

After determining that a petitioner committed a procedural default in state court, the Court must determine whether the procedural default is excused by a showing of cause for, and actual prejudice from the default. *Coleman v. Thompson*, 501 U.S. at 750. Establishing cause generally requires demonstrating an external obstacle that prevented the petitioner from fairly presenting the federal claim in state court. *Hedrick v. True*, 443 F.3d 342, 366 (2006). If Petitioner cannot demonstrate such an external obstacle, Petitioner's *Brady* allegations are defaulted.

Petitioner does not expressly assert the cause and prejudice that excuse his default of any of his specific *Brady* claims. Instead Petitioner states that the Magistrate Judge failed "to consider whether the Commonwealth's concealment of facts, combined with its representation that it disclosed all required *Brady* information, constitutes cause." (Obj., 10). Petitioner's theory

16

with respect to Jason Coleman does not appear in his petition and he has not provided evidence that exculpatory information related to Jason Coleman was withheld. Petitioner's objections suggest no cognizable cause and prejudice that would permit review. Petitioner's defaulted *Brady* claims cannot serve as cause for review of his *Brady* claims, and his defaulted ineffective assistance of counsel claims present the same problem for Petitioner.

Although Petitioner hurls many allegations, he fails to recognize that the Magistrate Judge addressed the flaws that underlay Petitioner's *Brady* claims. First, The Magistrate Judge found that the assertion that Petitioner was entitled to all facts in the possession of the government, rather than exculpatory facts, is not the law and never has been. (R&R, 40); *see Brady v. Maryland,* 373 U.S. 83 (1963) (holding that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material, defined as being exculpatory). Moreover, to the extent that Petitioner asserts that the prosecution did not fulfill its obligation, Petitioner has the responsibility to establish all of the elements set forth in *Brady*. In addition to addressing the merits of this claim, the Magistrate Judge found that this claim is procedurally defaulted.

Petitioner objected to the Magistrate Judge's refusal to allow him discovery so he could come forward with more specific evidence of the Brady violations and objects to the Magistrate Judge's refusal to conduct *in camera* review of the government's files to identify the undisclosed *Brady* information. (Obj., 11). Petitioner supports these objections by citing a footnote in *Pennsylvania v. Richie,* 480 U.S. 39, 58 n. 15 (1987). The Supreme Court in *Richie* noted that a petitioner must at least make some plausible showing of how their testimony would have been both material and favorable to his defense. *Id*. Here, Petitioner's assertions that there must have

17

been secret promises made to witnesses is, as the Magistrate Judge has already stated, "completely unsupported and highly speculative." (R&R, 42). Moreover, as noted by the Magistrate Judge, even if Petitioner's allegations were true, they failed to set forth any matters that would have been material, so as to satisfy the actual prejudice component of the "cause and prejudice" standard for overcoming procedural default. (R&R, 39). To the extent that the *Brady* allegations rely upon Petitioner's assertion that Owen Barber's affidavit is inconsistent with his testimony at trial, the affidavit was not in existence at the time of trial. In addition, it does not necessarily follow that Barber gave police inconsistent information prior to his trial because he executed an affidavit inconsistent with his trial testimony. The Court finds no error in the Magistrate Judge's determination that there were no *Brady* violations.

### III. Specific Objection 3: The Magistrate Judge Did Not Err by Finding that Petitioner's Due Process Fourteenth Amendment Rights Were Not Violated (Amd. Pet., Claim 3)

Petitioner objects to the Magistrate Judge's conclusion that this claim is defaulted because it purportedly was not presented in the state habeas petition. (Obj., 15). Petitioner claims that "in state claim XVI(B), he alleged that Barber's initial statements to the police were inconsistent with his trial testimony, and that the prosecution failed to disclose information about Barber's testimony based on these inconsistencies." (Obj., 15). Petitioner alleges that he has presented the same claim in his federal petition, stating, "except that the claim is now more focused because Wolfe has obtained additional facts about the information that was withheld: it consisted in part of a scheme to coordinate the testimony of Barber and J.R. Martin to eliminate material inconsistencies." (Obj., 15). With these statements, Petitioner concedes that he has changed the nature of the allegation and that he failed to provide the state court with a fair opportunity to rule upon it. Petitioner was obligated to present this claim to the state courts first

in order for it to be properly exhausted and thus properly subject to the exercise of jurisdiction by this Court. *See Smith v. Murray,* 477 U.S. 527, 533 (1986).

Petitioner also argues that to the extent he did not present his claim to state court, he objects to the Magistrate Judge's failure to consider the cause for the default, asserting that the factual basis for this claim was not available at the time of the state petition because Barber was unwilling to divulge the information to Petitioner. (Obj., 15). Petitioner asserts that Huff would not execute an affidavit until Barber was willing to do so and that the unavailability of the factual basis for the claim is an objective factor external to the defense that impeded Petitioner's ability to include the claim in his state habeas petition. (Obj., 15). Petitioner cites to *Murray v. Carrier,* 477 U.S. 478, 488 (1986) and *Strickler v. Green,* 527 U.S. 263, 283-89 (1999) to support his assertions of cause for the default. However, Petitioner's case can be distinguished from the cases he cites to in support of his claim. For example, the Court in *Stickler* found that the petitioner established cause for failing to raise a *Brady* claim prior to federal habeas because (a) the prosecution withheld exculpatory evidence; (b) petitioner reasonably relied on the prosecution's open file policy as fulfilling the prosecutions's duty to disclose such evidence; (c) the Commonwealth confirmed petitioner's reliance on the open file policy by asserting during state habeas proceedings that petitioner had already received "everything known to the government." *Strickler,* 527 U.S. at 289. The Court also emphasized that a "defendant cannot conduct the 'reasonable and diligent investigation' mandated by *McCleskey* to preclude a finding of procedural default when the evidence is in the hands of the State. *Id.* With this objection, Petitioner does not assert that the evidence was in the hands of the state but rather that the evidence was allegedly withheld by witnesses who refused to execute an affidavit until four

years after trial. (Obj., 15; R&R, 43). Petitioner's allegations are insufficient to constitute adequate cause for Petitioner's default.

Third, with respect to his due process claim, Petitioner objects to the Magistrate Judge's refusal to consider Barber's affidavit or the corroborative affidavits of Huff[7] and Coleman because all of the affidavits are in the appendix. (Obj., 15). The Magistrate Judge wrote that "without a single shred of evidence that this Court may properly consider, Petitioner leaps to the conclusion that the Commonwealth encouraged the two witnesses to lie and put them on the stand so the lies could be told." (R&R, 43). The Magistrate Judge noted that although Barber and Martin are capable of telling lies, the record suggests that they did not do so at trial. (R&R, 44). The Court believes that Petitioner's allegation of a false trial testimony arranged by prosecutors is an invention that does not provide adequate basis for Petitioner's discovery request or support for his defaulted substantive claim. The Magistrate Judge did not err by finding that Petitioner's due process Fourteenth Amendment rights were not violated.

## IV. Specific Objection 4: The Magistrate Judge Did Not Err by Dismissing Petitioner's Claim that the Jury Was Exposed to Outside Contact and Extraneous Influences in the Penalty Phase (Amd. Pet., Claim 4)

Petitioner asserts that his constitutional rights were violated on at least two instances in which the jurors were exposed to unauthorized outside contacts and extraneous influences during the penalty phase of trial. (Obj., 16). He alleges that these two instances each independently establish a violation of Petitioner's right to a fair resolution of his case and that the Magistrate Judge erred in dismissing these claims. (Obj., 16).

---

[7] Carl Lee Huff, Barber's former cell mate, submitted an affidavit stating that he acted alone in the murder of Petrole and then subsequently wrote a letter to his friends stating that he had already told the truth when he testified in court at Petitioner's trial and that he wished he could help Petitioner, but that lying was not the way.

Petitioner first objects to the Magistrate Judge's misrepresentation of the claim. (Obj., 16). Petitioner alleges that during a lunch breach, the jury foreman went outside the courthouse, had a photograph of his teenage son enlarged, brought the photo back into the jury room, placed it on the exhibits table next to gruesome photos of the teenage victim and, during deliberations, "asked the other jurors if [they] wanted that to happen to our sons." (Obj., 16). Petitioner argues that the Magistrate Judge mischaracterized this event as one that did not reflect any outside influences because it was one juror sharing a family photo with another and expressing concern about his son as a result of jurors having been separated from their families during the weeks of trial. (Obj., 17). Petitioner asserts that the Magistrate Judge's description of this claim is inconsistent with the record because the jurors were not separated from their families and the foreman did not need an exhibit-sized photo to commiserate about his son. (Obj., 17). Petitioner concludes that, contrary to the Magistrate Judge's assessment, the record shows that the foreman's importation and display of this photo did not reflect homesickness but rather reflected the intention to influence the juror's decision-making. (Obj., 17).

The Sixth Amendment guarantees a criminal defendant the right to trial by an impartial jury. U.S. CONST. Amend. VI. The United States Supreme Court has stated that "any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." *Remmer v. United States,* 347 U.S. 227, 229 (1954). In *Stockton v. Commonwealth*, the Fourth Circuit stated that "a Defendant must first establish both that an unauthorized contact was made and that it was of such a character as to reasonably draw into question the integrity of the verdict." 852 F.2d 740, 743 (4th Cir. 1988). Petitioner has failed to establish that unauthorized

21

contact was made with the jurors because Petitioner has complained about the alleged actions of the jurors themselves.

Petitioner also objects to the Magistrate Judge's conclusion that the juror's statements during deliberations are, "absolutely inadmissible" under Fed. R. Evid. 606 (b). (Obj., 17). Petitioner asserts that this rule expressly permits jurors to testify "about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, [or] (2) whether any outside influence was brought to bear upon any juror." (Obj., 17). Moreover, Petitioner argues that the evidence about what the foreman did and said fit within this exception. (Obj., 17). Petitioner cites no case law to support his argument.

Contrary to Petitioner's assertions, the Magistrate Judge correctly ruled that Petitioner's first and third claims did not involve presentation of extrinsic evidence or facts and that evidence regarding jury deliberations was inadmissible. *See* FED. R. EVID. 606 (b). In *Mattox v. U.S.*, 146 U.S. 140 (1892), the United States Supreme Court held that jurors will generally not be permitted to impeach their own verdicts by disclosing the motives or influences which affected their deliberations and decision. Also, Virginia Courts have specifically stated that they will not receive testimony of jurors regarding their own alleged misconduct in the jury room for the purposes of impeaching their verdict. *Morrisette v. Warden of Sussex I State Prison,* 613 S.E.2d 551 (Va. 2005). Virginia has been careful to protect the inviolability and secrecy of jury deliberations, adhering to the general rule that the testimony of jurors should not be received to impeach their verdict, especially on the ground of their own misconduct. *Kasi v. Commonwealth,* 508 S.E.2d 57, 67 (Va. 1998).

Petitioner additionally objects to the misconduct of a juror who had plans to take his

22

family to Disney World and who often spoke with his wife by cell phone to tell her he did not

know if the jury would finish in time for them to make the trip. (Obj., 18). Petitioner noted the

possibility that the juror's wife might have advised him to go along with the other jurors in order

to increase the likelihood of a quick and unanimous verdict. (Obj., 18). This claim was properly

dismissed because Petitioner's allegations are "without any support whatsoever." (*See* R&R, 60).

Petitioner has only offered speculation and consequently this claim deserves no merit. This Court

finds that the Magistrate Judge did not err in finding that the jury was not exposed to outside

contact and extraneous influences in the penalty phase.

**V. Specific Objection 5: The Magistrate Judge Did Not Err by Finding that Petitioner Was Not Deprived of His Right to the Effective Assistance of Counsel at Trial and on Appeal, and that His Deficient Performance Did Not Cause the Default of Other Constitutional Claims (Amd. Pet., Claim 5(a-g))**

Petitioner first asserts that the trial court lacked authority to try him for death-eligible

capital murder because he was indicted only for capital murder simpliciter, and that counsel

unreasonably failed to object. (Obj., 19). Petitioner also argues that trial counsel unreasonably

failed to timely object to the indictment and unreasonably failed to object to the trial court's

authority. (Obj., 20).

To prevail on an ineffective assistance of counsel claim, a defendant must make two

showings: (1) that counsel's performance was deficient; and (2) that this deficient performance

prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Under the first

prong, deficient performance is established where "counsel's representation fell below an

objective standard of reasonableness," as measured by prevailing professional norms. *Id.*

Scrutiny must be highly deferential to counsel's judgments. *Id.* at 691. Under the second prong,

prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id.* at 694. When a defendant

alleges prejudice with respect to his sentence, we "reweigh the evidence in aggravation against

the totality of available mitigating evidence." *Wiggins v. Smith,* 539 U.S. 510, 534 (2003).

There is no such thing as "capital murder simpliciter" in the law of Virginia. All persons

indicted under Va. Code §18.2-31 are charged with death-eligible capital murder. Petitioner's

argument is a misstatement of Virginia and constitutional law. As a result, this ineffective

assistance of counsel claim was properly dismissed because trial counsel had no obligation to

bring such a frivolous claim. Also, the Supreme Court of Virginia found this claim waived

during the direct appeal because Petitioner failed to file a pre-trial objection to the sufficiency of

the indictment.

Petitioner next asserts that trial counsel unreasonably moved to excuse a qualified juror

and the trial court improperly excused the juror without adequate legal basis. (Obj., 20).

This claim is without merit because Petitioner's counsel suspected the juror in question would

refuse to follow instructions and consequently asked to have him removed. (R&R, 48). The fact

that Petitioner's present counsel believes this juror was a favorable juror does not change the fact

that this juror was originally struck by Petitioner for tactical reasons. Petitioner's related

substantive claim was found waived by the Supreme Court of Virginia on direct appeal and must

be also be dismissed.

Petitioner's third ineffective assistance of counsel objection is that counsel unreasonably

failed to prepare Petitioner adequately for trial. (Obj., 23). However, the record does not support

either element of the *Strickland* test and reflects that Petitioner was focused when responding to

his attorney's questions, offered valid explanations of events, and was polite and respectful

24

throughout the proceeding, displaying no signs of expressive language disorder. This claim was

rejected on the merits by the Supreme Court of Virginia and must be rejected by this Court. This

Court agrees that Petitioner's related claim that he suffers from "expressive language disorder" is

unsubstantiated. *(See* R&R, 49).

Petitioner additionally asserts that counsel unreasonably failed to object to prejudicial

testimony and evidence introduced in violation of settled rules of evidence. He further asserts

that counsel failed to utilize available evidence to impeach testimony vital to the

Commonwealth's case, or to buttress testimony central to the defense case. (Obj., 25). In

addressing each of these alleged objection failures, the Supreme Court of Virginia rejected the

claims, stating that the evidence reflected personal knowledge or provided evidence of motive of

intent. Based on the record, the Supreme Court found that neither prong of *Strickland* was

satisfied and found the claims to lack merit.  Because neither prong of *Strickland* was satisfied,

the Supreme Court deemed the claims to be without merit. The Court agrees and adopts the

Magistrate Judge's recommendation.

Petitioner argues that trial counsel made promises to the jury in his opening statement

and then unreasonably failed to keep those promises. (Obj., 27). This objection was found to be

defaulted because Petitioner intentionally abandoned it during state habeas proceedings. Even if

this claim was not procedurally defaulted, it is without merit.  As the Magistrate Judge stated, "it

is not unusual for an attorney to present the expectation of a particular piece of evidence, only to

have the evidence not materialize." (R&R, 51). The Magistrate Judge further noted, "the

suggestion of a romance in Petitioner's life in the form of a relationship between Petitioner and

Barber's girlfriend depended upon Coleman's testimony." (R&R, 51). However, although

Coleman was available neither side called him. The Court agrees that counsel cannot legitimately be criticized for making a tactical decision not to use a witness whose testimony and behavior might have proven to be unpredictable. Therefore, Petitioner has failed to establish the deficient performance or the prejudice prong under *Strickland*.

Petitioner next argues that he was given an excessive sentence for the drug offense and trial counsel unreasonably failed to take steps to preclude the jury from hearing substantial prejudicial testimony about Petitioner's drug dealing. (Obj., 28). However, Petitioner's disproportionate sentence claim is defaulted because it was not raised at trial or on direct appeal. Also, because of Petitioner's and the victim's drug-dealing lifestyle, evidence of his drug activities would have been admissible under state law even if Petitioner had obtained a plea agreement on the marijuana charge. Therefore, this claim also fails under *Strickland*. Counsel's performance was not unreasonable and this Court finds no error the Magistrate Judge's recommendations.

## VI. Specific Objection 6: The Magistrate Judge Did Not Err by Finding that Defense Counsel Provided Adequate Representation during the Sentencing Phase of Trial ((Amd. Pet., Claim 6 (a-d; g, h))

Petitioner argues that defense counsel failed to provide adequate representation during the sentencing phase of trial. (Obj., 30). Petitioner believes the Magistrate Judge erred because defense counsel did not do what she was required to do under *Strickland* and the prevailing professional norms. (Obj., 30). The Magistrate Judge recognized that the *Strickland* standard focuses on attorney performance. (R&R, 52). The Magistrate Judge specifically noted that during the sentencing phase of trial, "Petitioner's counsel called fourteen witnesses; one failed to show and thirteen testified. The witnesses included petitioner; petitioner's mother, father, step-

mother, sister, brother, and cousin; and petitioner's friends, neighbors, and a professionally
trained counselor." (R&R, 52).  Based on the record, the Court agrees that on balance, defense
counsel rendered sufficient performance. The Magistrate Judge correctly stated that "any
attorney reviewing a trial transcript can create a better presentation of mitigation evidence than
was offered at trial...unfortunately, that standard does not apply." (R&R, 53). The Court finds no
error in the Magistrate Judge's ruling on this issue.

Petitioner argues lead counsel unreasonably delegated the task of preparing and
presenting the mitigation phase of the trial because co-counsel was not prepared to try a capital
case. (Obj., 30). However, The Supreme Court of Virginia and the Magistrate Judge properly
rejected the claim. Co-counsel interviewed people who knew Petitioner best in order to obtain
knowledge regarding her client. (R&R, 53). Co-counsel also presented a clinical psychologist to
speak to the jury about Petitioner's struggles, discussing the difficulties accompanying
Petitioner's parent's divorce and how hard Petitioner's mother worked to educate him. (R&R,
53). Overall, co-counsel was prepared and lead counsel's actions do not constitute an
unreasonable delegation.

Petitioner next asserts that trial counsel unreasonably failed to provide its own expert
witness with necessary materials about Petitioner's background. However, a clinical
psychologist was called by counsel and presented a good background on Petitioner. (R&R, 53-
54). The record reveals that Petitioner was not psychotic or neurotic, had no significant
emotional problems and was reasonably stable. (R&R, 53-54). At the time of trial, no one was
aware of any mental conditions that would excuse Petitioner's actions. (R&R, 53-54). Also, as
the Magistrate Judge put it, Petitioner's claim that he suffers from "expressive language

disorder" is "disingenuous, at best, and completely unsubstantiated." (R&R, 49). The record reveals that Petitioner's expert was a sound witness who offered explanations for Petitioner's conduct without trying to excuse his wrongdoings.

Petitioner also alleges that counsel unreasonably failed to seek additional time to prepare for cross-examination of Valatyka. (Obj., 34). The Magistrate Judge properly rejected Petitioner's complaint, noting that counsel was well prepared to examine this witness and successfully established that due to her failing memory she had confused Petitioner with his brother Wesley, thus defusing the Commonwealth's effort to portray him as dangerous. (*See* R&R, 54).

Petitioner additionally objects to the Magistrate Judge's failure to determine whether there is cause for the default of the *Mills v. Maryland* claim. (Obj., 35). Petitioner objects to the Magistrate Judge's statement that Petitioner's claim is defaulted. (Obj., 35). However, Petitioner's complaint that the jury did not receive life verdict forms is contradicted by the record and was found defaulted by the state court. The Magistrate Judge also correctly concluded that because the jury was instructed properly, there was no deficient performance by Petitioner's counsel. In addition, "the Virginia sentencing scheme does not require juries to make findings as to specific mitigating factors. Instead, juries are instructed to consider all mitigating circumstances before rendering their sentence decision," *Roach v. Angelone,* 176 F.3d 210, 223 (4th Cir. 1999). Therefore, Petitioner's claim fails on the merits in addition to being defaulted.

Petitioner finally asserts that counsel unreasonably failed to request an instruction that accomplice testimony be taken with great care. (Obj., 35). However, this complaint was never presented in his state habeas petition and is defaulted. *See Orbe*, 233 F. Supp. 2d at 763-64. In

28

addition, Petitioner was not entitled to this accomplice instruction because the accomplice

testimony in his case was corroborated. *See Dillard v. Commonwealth*, 224 S.E.2d 137, 138-139

(Va. 1976); *See also Clark v. Commonwealth*, 247 S.E.2d 376, 379-80 (Va. 1978). The Court

approves and adopts the Magistrate Judge's recommendations.

**VII. Specific Objection 7: The Magistrate Judge Did Not Err by Finding that Trial Counsel's Errors Do Not Undermine the Confidence in the Outcome of Petitioner's Case Whether Taken Individually or as a Whole (Amd. Pet., Claim 7)**

Petitioner objects to the Magistrate Judge's dismissal of this argument as a "generic

claim." (Obj., 37). Petitioner argues that when trial counsel's performance is compared against

the prevailing professional norms, it continually falls short. (Obj., 37). This claim presents no

new facts and finds no support in law. In determining whether Petitioner was denied effective

assistance of counsel, the court must consider the totality of evidence before the jury. *Strickland,*

466 U.S. at 695. Petitioner has unsuccessfully attempted to group together individual instances

of attorney error for the purposes of satisfying the deficient performance standard under

*Strickland.* However, on balance, trial counsel gave Petitioner adequate representation at every

stage of trial and this Court finds no attorney errors that had a pervasive effect on the inferences

to be drawn from the evidence. *See id* at 696. This Court agrees with the Magistrate Judge's

recommendations.

**VIII. Specific Objection 8: The Magistrate Judge Did Not Err by Rejecting Petitioner's Claim that Appellate Counsel Unreasonably Failed to Brief Eleven Assignments of Error (Amd. Pet., Claim 8)**

Petitioner alleges that appellate counsel failed to brief eleven assignments of error.

However, the Magistrate Judge correctly held that issues raised on appeal are to be determined

by appellate counsel. As the Magistrate Judge noted, "every issue available cannot be briefed on

appeal, and every issue briefed on appeal cannot be argued." (R&R, 57). This exercise of

judgment by counsel is neither deficient nor prejudicial, thus neither prong of *Strickland* has

been satisfied. Moreover, Petitioner failed to identify the merit in any of these defaulted claims.

### IX. Specific Objection 9: The Magistrate Erred by Finding that the Application of the Death Penalty to Petitioner Was Not Unconstitutional ((Amd. Pet., Claim 9 (a-e))

Petitioner argues that the state court's decision in his case and in other state cases is

contrary to the superior authority of the United States Supreme Court. (Obj., 39). However,

Virginia's capital sentencing scheme meets the "narrowing" requirement required under the

Constitution by defining capital murder at the guilt stage. *See* VA. CODE ANN. § 18.2-31; *see*

*also Zant v. Stephens,* 462 U.S. 862, 877 (1983). The United States Supreme Court

acknowledged that the fact that the scheme also provides for a finding of aggravating factors in

the penalty phase does not make the scheme constitutionally infirm, even if the factors may seem

to overlap. *Lowenfield v. Phelps,* 484 U.S. 231, 241 (1998).  Also, the Fourth Circuit has

repeatedly held that Virginia's vileness factor is not unconstitutional. *See Barnabei v. Angelone,*

214 F.3d 463, 472 (4th Cir. 2000)(citing cases). In support of his decision, the Magistrate Judge

wrote, "the nature of the killing was as vile an act as could have been perpetrated." (R&R, 63).

Evidence of aggravated battery to a victim who was shot ten times was sufficient to establish

vileness.

Nevertheless, even if Petitioner succeeded with his argument that Petitioner's conduct in

committing the crime was not sufficiently vile, he would still fail to overcome the "future

dangerousness" element. In order to support a finding of future dangerousness, Virginia law

requires a finding that the defendant will commit "criminal acts of violence that would constitute

a continuing serious threat to society." Va. Code Ann. § 19.2-264.2.  The Supreme Court of

Virginia discussed the evidence in the record addressing Petitioner's conversations with various witnesses concerning robbing drug dealers and the steps taken, on more than one occasion, to see if such an offense could be committed without risk of discovery. The evidence revealed that Petitioner, a drug dealer who planned robberies of other drug dealers, would likely commit criminal acts of violence in the future that would pose a serious threat to society. Therefore, the state court's decision was not unreasonable.

Petitioner argues that the trial court imposed Petitioner's sentences in violation of the Sixth and Fourteenth Amendments to the United States Constitution. (Obj., 42). However, the Magistrate Judge properly refused to grant relief on a defaulted claim or to give credence to post trial hearsay statements attributed to the trial judge. Petitioner next argues that Virginia's death penalty scheme is random and arbitrary, in violation of the Eighth and Fourteenth Amendments. (Obj., 43). With respect to this claim, the Magistrate Judge properly denied relief upon Petitioner's defaulted assertions of unconstitutionality, based upon articles that assert a geographic disparity in the application of the death penalty. The Court finds no error in the Magistrate Judge's recommendations.

## X. Specific Objection 10: The Magistrate Judge Not Err by Finding that the Jury Was Adequately Informed of the Law (Amd. Pet., Claim 10)

Petitioner argues that the jury was not adequately informed of the law and that the record in this case shows with convincing clarity that the prosecutor caused the jury to "innappropriately speculate on what might happen in a case." (Obj., 44). However, Petitioner was not constitutionally entitled to an erroneous instruction that, if convicted and sentenced to life, he could never be released from prison. The Supreme Court of Virginia reasonably rejected this claim and the Magistrate Judge was correct in also rejecting this claim.

31

## IV. CONCLUSION

The Court, having examined the objections to the Magistrate Judge's R&R, and having reviewed the record, conducted a *de novo* review, and made *de novo* findings with respect to those portions objected to, does hereby **ORDER** that the petition be **DENIED** and **DISMISSED**. The Court also **GRANTS** Respondent's motion to dismiss.

The Court **DIRECTS** the Clerk to send a copy of this order to the parties.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 7, 2008

32